IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7, Subchapter IV |
| GRIFFIN TRADING COMPANY, ) | |
| ) | Case No. 98 B 41742 |
| Debtor. ) | Hon. Erwin I. Katz |

**REPLY IN SUPPORT OF FINAL APPLICATION FOR ALLOWANCE OF
COMPENSATION AND REIMBURSEMENT OF EXPENSES OF MAYER, BROWN &
PLATT AS SPECIAL U.K. COUNSEL TO THE DEBTOR AND SPECIAL
INVESTIGATIVE COUNSEL**

Mayer, Brown & Platt ("MBP") submits the following reply in support of its fee application for professional compensation dated December 22, 2000 ("Fee Application") and in response to the three objections to its Fee Application (collectively, the "Objections") that were filed by Leroy G. Inskeep, as Chapter 7 trustee (the "Trustee") of the estate of Griffin Trading Company (the "Debtor"), the Commodity Futures Trading Commission ("CFTC") and Mark J. Walsh Global L.P. ("Walsh").

### Background: The Parameters of MBP's Retention

As set forth in the Fee Application, MBP was retained as special counsel to the trustee in this case for two limited purposes: commencement of the UK Liquidation proceedings and the investigation of the Park trades and matters incidental thereto. The application of the trustee pursuant to which MBP was retained (the "Retention Application"; a copy of which is attached as Exhibit A to the Fee Application) estimated the amount of fees and expenses relating to the commencement of the UK Liquidation at $31,000. Retention Application, ¶ 8 at page 4. The Retention Application further stated that "the fees and expenses incurred by MBP relating to the

4886613

-2-

investigation shall not exceed $100,000 in the aggregate, and this $100,000 'cap' shall apply regardless as to whether the UK Liquidators and/or this estate pay such fees and expenses." Retention Application, ¶ 13 at p. 8. MBP's retention was approved pursuant to an Order of this Court (a copy of which is attached as Exhibit B to the Fee Application) provided that MBP's compensation would be "subject to the $100,000 cap discussed in the Fee Application." As set forth in the Fee Application, the only mention of the $100,000 "cap" set forth in the Retention Application is the language from paragraph 13 quoted above, which expressly relates only to the investigation of the Park trades only. Id., ¶¶ 1-17, pp. 1-10.

The Retention Application also disclosed that, in addition to the commencement of the UK Liquidation Proceedings and the Park investigation (which were joint representations for both the UK Liquidators and the trustee), "the UK Liquidators and MBP have agreed that MBP's representation of the UK Liquidators will cover the proper treatment of claims on U.C. client money accounts [and] the MeesPierson purported setoff." Id., ¶ 9 at p. 5. Nothing in the Retention Application stated that this additional work, to be done only for the UK Liquidators, was to be subject to any cap, see id. and as noted, the only "cap" described in the Retention Application related to the investigation only.

### MBP's Fee Application Complies with Retention Application and Local Rule 607

MBP's fee application seeks allowance and payment *from this estate* of $63,841 in total fees and $11,043.89 in total expenses. As required by the Retention Application and as contemplated by local rule, the Fee Application includes "a description of all services rendered and expenses incurred by MBP in connection with the commencement of the UK Liquidation Proceeding and the investigation, whether or not the related fees and expenses (or any portion thereof) are to be paid by

4886613

-2-

the UK Liquidators, and [ ] disclose[s] the portion of which [that] shall have already been or is expected to be paid by the UK Liquidators." Retention Application, ¶ 13, at p. 8.

Specifically, with respect to the commencement of the UK Liquidation Proceeding, the Fee Application (1) seeks the allowance and payment of $28,042.50 in fees and $1,869.40 in expenses (for a total of $29,911.90, which is less than the $31,000 estimate therefor set forth in the Retention Application), (2) breaks down such fees by lawyer and such expenses by category, (3) includes a description of all services rendered and expenses incurred by MBP in connection therewith (including the pertinent time and expense entries relating thereto, attached as Exhibit C to the Retention Application), and (4) states that MBP has received no payment of such amount from either this estate or the UK Liquidators. Retention Application, ¶¶ 19-23, at pp. 6-8 and Exhibit C thereto.[1]

With respect to the investigation of the Park Investigation, the Fee Application (1) discloses that MBP rendered services in a fee amount of $144,913.00 and incurred expenses in the aggregate amount of $37,044.99 (for a total of $181,957.99), (2) breaks down such fees by professional and such expenses by category, (3) includes a description of the services rendered and expenses incurred (including the pertinent time and expense entries relating thereto, included in Exhibits D - H thereto), (4) acknowledges that this $181,957.99 total is in excess of the $100,000 "cap" for the investigation,

---

[1] As stated in ¶ 23 of the Retention Application (at p. 8), "[s]hould such fees and expenses be paid by the UK Liquidators between now and the hearing date on this application, MBP, of course, will file an amendment to this application withdrawing its request for allowance and payment of these fees." MBP does not presently expect such a payment. Although we have not discussed the matter with the new counsel for UK Liquidators, attorneys in MBP's London office were previously told by representatives of the UK Liquidators that the trustee had informed them that they should make no further payments to MBP.

4886613

-3-

and (5) accordingly, requests payment of only $44,972.99 based on $35,798.50 in fees and $9,174.49 in expenses remaining due and outstanding under the $100,000 cap.[2]

Thus, the trustee is simply wrong when he states that "MBP has failed to aid the parties and the Court by spelling out exactly what it has been paid and what it seeks to be paid." Trustee Objection, ¶3 at p. 2 n. 1.

### The Fee Application's Disclosure Goes Beyond the Requirements of the Retention Application

In the Retention Application, MBP agreed to disclose the amounts paid by the UK Liquidators on account of the commencement of the UK Liquidation Proceeding and the investigation of the Park Trades. Retention Application, ¶ 13 at p. 8. However, in the interest of full disclosure, MBP submitted in the Fee Application five other statements to the UK Liquidators relating to client moneys, the Meespierson claim, and other matters incidental thereto or unrelated to the Park investigation.[3]

---

[2]   Adding these amounts to the $28,042.50 in fees and $1,869.40 in expenses relating to the commencement of the UK Liquidation Proceeding results in the total of $63,841 in fees and $11,043.89 in total expenses sought in the Fee Application. As with the fees and expenses relating to the commencement of the UK Liquidation Proceeding, the Fee Application states that "[s]hould such $44,972.99 amount be paid by the UK Liquidators between now and the hearing date on this application, MBP, of course, will file an amendment to this Application withdrawing its request for payment of such amount." Id. Again, MBP presently does not expect to receive any such payment from the UK Liquidators.

[3]   Copies of these statements were attached as Exhibits I - M, to the Fee Application. The UK Liquidators have paid the statements attached as Exhibits I and J thereto, but have not yet paid the statements attached as Exhibits K - M thereto. MBP expressly reserved and continues to reserve its right to receive the payment of these statements, which total $30,962.12 (including the Value Added Tax) and which are not subject to the $100,000 "cap", from the UK Liquidators. See Fee Application, ¶ 34 at p. 11.

4886613

-4-

MBP does not expressly state in the text of the Fee Application the total amount of compensation it has received to date from the UK Liquidators, but, of course, the only amounts truly pertinent to the Fee Application are payments made either with respect to the commencement of the UK Proceeding (of which none has been made) or the Park Investigation (of which, as plainly discussed in the Fee Application, $55,027.01 has been paid). Moreover, the Fee Application does provide information from which such total amount can be calculated Retention Application, ¶¶ 28-29, 33 and pp. 10-22 and Exhibits I-J attached thereto. For the record, the total of all compensation received to date by the UK Liquidators is $130,544.63, of which, as indicated, only $55,027.01 relates to the compensation sought in the Fee Application.

Thus, the Fee Application correctly and properly requests payment of (a) $29,911.90 in respect of MBP's fees and expenses pertaining to the commencement of the UK liquidation proceeding and (b) $44,972.99 in respect of its work on the Park Investigation. That $44,972.99, of course, represents the net balance of fees and expenses that MBP agreed it would limit itself to receive payment of in this matter since it already has been paid $55,027.01 by the UK Liquidators in respect of the Park Investigation work. The remaining balance of moneys received from the UK liquidators – $75,517.62 – reflects compensation for services rendered and expenses incurred by MBP that do not relate to the Park Investigation and, therefore, are not subject to the $100,000 cap.

### The Objections to MBP's Fee Application are without Merit

In response to the Fee Application, three Objections were filed. Before addressing what the objecting parties had to say, it is important to note what they did not say. None of the Objections argue that MBP's services were not "necessary to the administration of, or beneficial at the time at

4886613

-5-

which the service was rendered." 11 U.S.C. ¶330(a)(3)(C).[4] Likewise, none of the Objections assert that MBP's fees fail to represent the actual, necessary or reasonable value of its services. *See* In re Spanjer Brothers, Inc., 191 B.R. 738 (Bankr. N.D. Ill. 1996). Nor do the Objections state that MBP acted in an inefficient or unreasonable manner. In re Woodfield Gardners Associates, 1998 Westlaw 276453 (Bankr. N.D. Ill. 1998). Indeed, nowhere in the Objections is it asserted that any of the compensation sought by MBP is "unreasonable" in light of the services it has performed in this case. *See* In re Kenneth Leventhal & Co., 19 F.3d 1174 (7th Cir. 1994). Yet, each of these arguments reflect the standards upon which MBP's Fee Application should be judged and having satisfied them, MBP should be fairly compensated.

Instead, the Objections, with no decisional authority, a clear misreading of the Retention Application and Order, and taking statements made by the undersigned at the hearing on the Retention Application out of context, ask the Court to deny MBP compensation it seeks in the Fee Application for its reasonable and necessary services.[5] None of these arguments have merit. The Court should overrule the Objections and approve the Fee Application.

First, the objectors argue that this Court's Order imposes a $100,000 cap on *any and all* compensation to be received by MBP. However, this ignores the clear and unambiguous provisions of the Order, which simply states that MBP's compensation is to be "subject to the $100,000 cap

---

[4]  The Walsh objection comes the closest by asserting that "this estate has realized little or no benefit from its report." Wash Objection, ¶ 5 at p. 4. However, the Walsh claimants cite nothing in support of such an assertion and there is no such support.

[5]  Indeed, the Walsh claimants actually seek an Order directing MBP to return to this estate $30,000 of the moneys it has received to date from the UK Liquidators. Walsh Objection at p.4.

4886613

discussed in the [Retention] Application." As demonstrated at length above, the $100,000 "cap" is mentioned only in ¶ 13 of the Retention Application and that reference unequivocally applies the cap only to fees and expenses relating to the Park investigation. Id. ("the fees and expenses incurred by MBP *relating to the investigation* shall not exceed $100,000 in the aggregate") (emphasis supplied). Thus, the assertion by the objectors that the Order "caps" MBP's compensation at $100,000 even with respect to services and expenses unrelated to the Park investigation is inconsistent with the plain terms of the Order itself and constitutes a fundamental misreading thereof.[6] The Fee Application plainly requests compensation from the estate in a manner that fully comports with the $100,000 cap. Only fees and expenses pertaining to the Park Investigation have been capped. All of these other types of services were expressly referenced in the Retention Application (¶9, p.5) and it is simply incongruous for the objecting parties to now argue that they nevertheless should be made subject to the cap on fees for the Park Investigation.

Second, the objectors argue that their interpretation of the Order, which ignores the unambiguous provisions of the Order, is supported by statements made by the undersigned at the January 13, 1999 hearing on the Retention Application. Trustee Objection, ¶ 9 at p. 9; Walsh Objection, ¶ 3 at p.2; CFTC Objection, at p. 3. However, the undersigned's comments, which even taken out of context refer back to the description set forth in the Retention Application, are quoted

---

[6] The Trustee and CFTC effectively concede as much by acknowledging that the "cap" does not apply to the fees and expenses relating to the commencement of the UK Liquidation Proceeding. Trustee Objection, ¶ 4 at p. 2; CFTC Objection, p. 3 n.1. The obvious textual basis for this agreement is that the commencement of the UK Liquidation Proceeding was discussed in the Retention Application and the only description of the "cap" in the Retention Application was in relation to the Park investigation, i.e., not in relation to any other matters such as the commencement of the UK Liquidation Proceeding.

4886613

out of context. When placed in context, they do not support the Objectors' interpretation of the Order and are instead consistent with the express provisions of the Order.

The discussion preceding the undersigned's statements clearly related to the "cap" in the context of the investigation of the Park trades. The quotation of the complete exchange involving the undersigned's comments underscores this:

> MR. HARVALIS: Judge, what I wanted to clarify for the record, my understanding is and I think the affidavit reflects it is that Mayer, Brown has never represented the principals of Griffin Trading.
> They received a $25,000 retainer which flowed through the company. They are not sure. It may have come from the principals. The question that we raised with them is whether or not, ethically as well as pragmatically, *if their report contains information which indicates that there might be some responsibility against the principals whether they could go forward.* They have assured me they have no conflict in that regard, Judge. I think the affidavit reflects that but it is an unusual situation. I wanted to clarify that for the record. I would ask Mr. Kiriakos to clarify that for the record.
> *With that understanding, your Honor,* and with the cap which they have negotiated for their fees, $100,000, although again, Judge, I understand they are going to get some compensation from the foreign proceedings, so to some extent it is an allocation but if it --
>
> MR. KIRIAKOS: If I may, your Honor, I can comment about this. As pointed out in paragraph four of Mr. Fahner's affidavit, prior to the events of the 21st and 22nd, May, Brown and Platt had never represented either the company nor the principals. Mr. Fahner had a longstanding personal relationship with one of the principals, Tex. *We do not represent the individuals now, have never represented those principals, will not in connection obviously with the investigation.*
> With respect to the cap, it is *as the application pointed out,* the cap is a cap. It applies both to what we do with respect to the liquidator in the UK and what we do here. So Mr. Harvalis is right in the sense that it is an allocation problem, but yet the cap is the cap.

1/13/01 Tr. (emphasis supplied).

Thus, the colloquy involved the investigation and was concerned with the operation of the cap in that context only. As noted, the Retention Application, to which the undersigned made

4886613

-8-

reference during the colloquy, describes the cap as only being applicable to the fees and expenses of the investigation of the Park trades. Moreover, that is the manner in which the undersigned understood what was involved in the exchange. Finally, the Fee Application is consistent with this exchange and the Assistant United States Trustee's subsequent comments. The Fee Application treats the cap as applying to all work done with respect to the investigation and allocates $55,027.01 attributable to the investigation paid to date by the UK Liquidators to the UK Liquidators, and the $44,972.99 balance to this estate. In short, the unambiguous Order approving MBP's retention application has not been, and cannot be, substantively modified by the colloquy that took place before the Court at the hearing on its entry.

Third, the Objections argue that none of the fees pertaining to the commencement of the UK liquidation proceeding may be paid by the U.S. estate and that all of the fees paid by the Liquidators has to be applied against the cap. Both assertions are wrong. Nowhere in the Order approving the retention application, or in the Fee Application itself is MBP precluded from seeking compensation from the U.S. estate for those fees and expenses. While the parties may have "expected" to have such services paid for by the UK Liquidators, there is nothing which prevents MBP from being paid by the U.S. Estate. On the contrary, the UK Liquidation proceeding was initiated at the urging of the Trustee and with the understanding that it would have a collateral benefit on the administration of the U.S. assets. Not surprisingly, therefore, the Objections do not argue, and cannot argue, that those services did not benefit the estate or where otherwise unreasonable. In the absence of such proof, those services are entitled to compensation. More important, as set forth in the Retention Application, MBP is not adverse to receiving payment of this amount instead from the UK Liquidators, but, as noted, has previously been informed by the UK Liquidators that the trustee has

4886613

-9-

directed them not to make any further payments to MBP of any fees or expenses. If that is in fact the case, it is unfair for the trustee to argue that MBP should look instead to the UK Liquidators for these fees and expenses.

Fourth, the trustee asserts that counsel for the Trustee contemplated at the time of MBP's retention that any work MBP performed for the Trustee or the English Liquidators relating to estate matters (other than the commencement of the English liquidation proceedings) was to be covered by the $100,000 cap. *See* Trustee's Objection, ¶ 10 at p. 3. However, MBP was never informed of any such "contemplation" and nowhere in the record is such a "contemplation" expressed. On the contrary, the Retention Application discloses the other work to be done for the UK Liquidators by MBP, but contains no mention of the application of any cap thereto. Retention Application, ¶ 9 at p. 5.

Fifth, both the Trustee and CFTC argue that the other services rendered by MBP to the UK Liquidators are integrally related to the Park investigation and cannot be separated therefrom. They are simply and fundamentally mistaken. The vast bulk of the services rendered by MBP that did not relate to the investigation of the Park trades related to the issue as to the priority of claims in and to the client moneys held by the UK Liquidators. This issue is conceptually distinct from and independent of the subject of the investigation -- the facts underlying the Park trades and potential causes of action relating thereto. Similarly, the issue of the claim asserted by MeesPierson against the UK Liquidation Proceedings, although more related to the Park investigation than the client money issue, is conceptually different from the fact investigation of MeesPierson in the Park trades.

Sixth, as noted, without the citation to authority in support of such a drastic remedy, the Walsh claimants assert that the Court should deny the application because it is unnecessary

4886613

confusing and facts to provide all the necessary information. Not only is this not supported by any cited authority, but is factually untrue. As set forth in detail above, the Fee Application complies with the requirements of the requirements of the Retention Application and Local Rule 607.

Moreover, notwithstanding the CFTC's assertion to the contrary, the Fee Application does address overhead expense matters. Fee Application, ¶ 21 at p. 7. More important, as the Fee Application clearly discloses, MBP's fees relating to the investigation alone exceeded the $100,000 cap by approximately $45,000. Thus, the expenses could be disallowed in their entirety, and MBP would still be entitled to recover the full $100,000 "capped" amount relating to the investigation.

WHEREFORE, for all of the foregoing reasons and as set forth in the Fee Application and its accompanying exhibits, Mayer, Brown & Platt respectfully requests that the Court overrule each of the Objections, enter an order approving payment of $63,841.00 in fees and $11,043.89 in expenses requested by MBP and grant such other or further relief as may be deemed just under the circumstances.

Dated: January 12, 2001                    Respectfully Submitted,

                                           MAYER, BROWN & PLATT

                                           By: /s/ Thomas S. Kiriakos
                                           _____
                                                 One of Its Partners


Thomas S. Kiriakos, Esq. (ARDC #6184699)
Mayer, Brown & Platt
190 South LaSalle Street
Chicago, Illinois 60603-3441
(312) 782-0600

4886613

-11-